Honorable J. S. Murchison
Executive Director
State Department of Public Welfare
Austin, Texas

Dear Sir:

Opinion No. O-5399
Re: Construction and applica-
tion of Senate Bill No.
169, Acts 48th Leg.,
Regular Session.

We have your letter of June 10, 1943 requesting
our opinion on a number of questions concerning the above
captioned subject.

Senate Bill No. 169, supra, including its title,
whereas clauses and emergency clause, reads as follows:

"AN ACT

to amend Section 21 of Article 695c, of the
Revised Civil Statutes of the State of Texas
of the Year 1925 Codification, Chapter 8, un-
der Title 20, being the Public Welfare Act of
1941, also being House Bill No. 611 passed by
the Regular Session of the 47th Legislature of the
State of Texas, by adding a new section thereto to
be known as sub-section 21a providing that the De-
partment of Public Welfare shall not consider in-
come derived in payment of labor actually performed
or service rendered by the needy recipients of old
age assistance or who may hereafter be placed on
said rolls, where the total amount for any calendar
year does not exceed Two Hundred Fifty ($250.00)
Dollars, and declaring an emergency.

"WHEREAS, The United States is now engaged in a tremendous war effort against the Axis Powers which has resulted in a serious and acute loss of man power in certain industries, and particularly in agriculture; and

"WHEREAS, The Secretary of Agriculture, as well as the National Selective Service Director and other prominent leaders in the nation's war effort, now predict that there will be a great food shortage facing our country during the current year which would not only tend to stifle our war efforts at home and abroad but would greatly slow down and curtail supplies to our allies under the Lend Lease Program; and

"WHEREAS, The National Selective Service Director now estimates that at least one million (1,000,000) soldiers and sailors will have to be released from the armed forces, where they are so greatly needed, so as to return to the farms in order to avoid an acute shortage of food; and

"WHEREAS, It has been the policy of the Department of Public Welfare, under House Bill No. 611, to remove old age assistance recipients from the rolls in the cases where such recipients temporarily engage in remunerative employment, with the result that such old age assistance recipients have been constantly threatened with being removed from the rolls in cases where they accepted employment; and

"WHEREAS, It would be in furtherance of the war effort to relax the policies, rules and regulations of the Department of Public Welfare during this period of great emergency, in order to permit such recipients to do seasonal or temporary work without being threatened with removal from the pension rolls, and thereby relieve the strain on agriculture and labor; now therefore BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1.  That Section 21 of Article
695c, of the Revised Civil Statutes of the
State of Texas of the Year 1925 Codification,
Chapter 8, under Title 20, being the Public
Welfare Act of 1941, also being House Bill
No. 611 passed by the Regular Session of the
47th Legislature of the State of Texas be
amended by adding a new and additional section
at the end thereof to be known as Section 21a,
which shall hereafter read as follows:

'Section 21a.  Provided, however, that
until the United States of America has con-
cluded and entered into treaties of peace with
all of the nations with whom she is now at war,
commonly referred to as the Axis Powers, no
grant of assistance to any recipient of old age
assistance who is already on the rolls or who
may hereafter be placed on said rolls, and is
already receiving old age assistance, shall be
reduced or revoked by reason of the fact that
any such needy recipient may derive or receive
other and additional income to take care of his
additional needs above his grant, from seasonal
or occasional employment, until and unless such
needy recipient shall receive more than Two
Hundred Fifty ($250.00) Dollars of outside and
additional income during a calendar year; pro-
vided said recipient of old age pension reports
his said employment, in writing, to the local
office of Public Welfare, giving the name and
address of his employer or employers at the end
of each month, and giving the amount of his
earnings during the month just passed.  Provided
further, that neither the State Department of
Public Welfare nor any of its district or county
agencies in the county or district in which the
needy aged person resides shall give any consid-
eration to any such income received by recipients
of old age assistance up to the amount of Two
Hundred Fifty ($250.00) Dollars that is actually
derived and received in payment for labor actually
performed or services rendered during a calendar
year.

"It is the declared purpose of this section
to encourage recipients of old age assistance to
aid in overcoming the great shortage of manpower
during this great war emergency by performing
necessary labor when and wherever possible without
being faced with the possibility of having pen-
sions reduced, or being removed from the pension
rolls altogether."

"Sec. 2. The fact that the United States
of America is now engaged in a world-wide war,
the prosecution of which is being greatly hin-
dered because of an acute shortage of manpower,
especially farm labor; and the further fact
that it has been the policy of the Department
of Public Welfare to consider income and other
resources of aged persons who are the recipients
of old age assistance by either reducing pensions
or removing such persons from the pension rolls
altogether, and because of such policy there is
a hesitancy and reluctance on the part of such
old age recipients to engage in necessary labor
which will either directly or indirectly aid in
the prosecution of the war, creates an emergency
and an imperative public necessity that the
Constitutional Rule requiring bills to be read
in each House on three several days be suspended,
and the Constitutional Rule requiring bills to go
into effect ninety days from and after their
passage, be and the same are hereby suspended,
and this Act shall take effect and be in force
from and after its passage, and it is so enacted."

Your first question is:

"Does Senate Bill No. 169 apply to recipients
on the rolls as of a certain date? If so, what
date?"

Senate Bill No. 169 provides that "no grant of
assistance to any recipient of old age assistance who is
already on the rolls or who may hereafter be placed on said

rolls, and is already receiving old age assistance, shall be reduced or revoked" by reason of earning certain income. It is clear from the plain language of the Act that its provisions apply to all those persons who, at the time of the effective date of said Act, are on the rolls and are already receiving old age assistance. In addition, we must give some effect to the phrase "or who may hereafter be placed on said rolls." If we say that said phrase is modified by the phrase "and is already receiving old age assistance", it is rendered entirely meaningless because it is impossible for there to be a person who may hereafter be placed on said rolls who is already receiving old age assistance.

The phrase "or who may hereafter be placed on said rolls" was added to Senate Bill 169 by Senate Amendment. Senate Journal, p. 938, April 27, 1943. We must, therefore, give this phrase some meaning because it cannot be presumed that the Legislature added a phrase to the Act which would be without meaning. To do this we must say that the phrase "or who may hereafter be placed on said rolls" is not modified by the phrase which immediately follows it.

It follows that the provisions of Senate Bill No. 169 apply to all persons who were receiving old age assistance at the time said Act became effective and to all persons who are subsequently placed on the rolls and given old age assistance.

Your second question is:

"Does Senate Bill No. 169 apply to the income being received by persons applying for assistance after the effective date of the Act? If not, what effect should the Department give to the phrase 'or who may hereafter be placed on said rolls'?"

In our opinion, the only purpose of Senate Bill No. 169 is to prevent the State Department of Public Welfare

from reducing or revoking old age assistance grants by reason of the fact that the recipients thereof receive certain additional income from seasonal or occasional employment. It follows that Senate Bill No. 169 does not apply to the income being received by persons applying for assistance after the effective date of the Act. This for the reason that said Act applies only to certain income of those individuals receiving old age assistance and not to the income of those individuals applying for such assistance. It is only after such individuals have been placed on the rolls and granted old age assistance that they become recipients "who may hereafter be placed on said rolls". It follows that after such individuals have been given a grant of assistance, the provisions of Senate Bill No. 169 become immediately operative and they would be entitled to earn an additional income of $250.00 per calendar year from seasonal or occasional employment without having their grant of assistance reduced or revoked.

Your third question is:

"Does the phrase 'outside and additional income' as used in Senate Bill No. 169 mean only income other than income which has already been considered by the Department in determining eligibility and amount of grant of a given recipient?"

In answer to your third question, it is our opinion that the phrase "outside and additional income" means income other than that income which has already been considered by the State Department of Public Welfare in determining elibibility and amount of grant of a given recipient. To illustrate: "x" received old age assistance in the amount of $20.00 in May, 1943. This payment was based on a finding by the State Department of Public Welfare that he needed $30.00 per month to provide himself with the basic necessities and because he had an income of $10.00 per month. Still needing only $30.00 per month, "x" subsequently obtains employment

from which he receives an additional income of $250.00 per calendar year. The phrase in question has reference to the $250.00 but has no reference to the $10.00 per month income. We might add that in our opinion the term "such income" as used in Senate Bill No. 169 has reference to and means the same thing as "outside and additional income".

Your fourth question is:

"Does Senate Bill No. 169 apply to a recipient who had no income on the effective date of the Act? If so, what effect should be given the words 'additional' and 'outside' in reference to income?"

In answer to your fourth question, we are of the opinion that the provisions of Senate Bill No. 169 applies to every recipient on the old age assistance rolls as of May 1, 1943 irrespective of whether such recipient had any income as of that date. We find no language in the Act which, to us, evidences a legislative intention to limit the provisions of this Act to that group of old age recipients who actually had an income as of the effective date of said Act. To our minds the words "additional" and "outside" are used in a descriptive sense to identify the particular income to which the Act has application.

Since your fifth and sixth questions are somewhat related, we will discuss them together. Said questions are as follows:

"5. Does Senate Bill No. 169 apply to a recipient receiving additional income from seasonal or occasional employment if the income is for purposes other than 'to take care of his additional needs above his grant'?"

"6. Does the phrase 'needs above his grant' as used in Senate Bill No. 169 mean the difference in the recipient's budgeted needs and the total of his previously determined income and assistance grant?"

In replying to these questions, we deem it appropriate to refer to several sections of House Bill No. 611, Acts 47th Leg., R. S. P. 914 (Codified as Article 695c, V. A. C. S.) since the Act in question, Senate Bill No. 169, is an amendment thereto. Section 20 (5) provides:

"Sec. 20. Old Age Assistance shall be given under the provisions of this Act to any needy persons:

". . . .

"(5) Who has not sufficient income or other resources to provide a reasonable subsistence compatible with health and decency. Provided that in consideration of income and resources actually available to applicant the State Agency shall not evaluate income and resources which may be available only to relatives of applicant. Income and resources to be taken into consideration shall be known to exist and shall be available to the applicant. An applicant for old age assistance shall not be denied assistance because of the existence of a child or other relative, except husband or wife, who is able to contribute to the applicant's support, and no inquiry shall be made into the financial ability of said child or other relative, except husband or wife, in determining applicant's eligibility. The applicant's child or other relative, except husband or wife, is to be treated by the State Department in the same way as any person not related to the applicant; any aid or contributions to the applicant from such child or other relative, except husband or wife, must actually exist in fact, or with reasonable certainty, be available in the future to constitute a resource to the applicant."

Section 21 provides:

"Sec. 21. The amount of assistance which shall be given under the provisions of this Act to any individual as old age assistance shall be determined by the State Department through its district or county agencies in the county or district in which the needy aged person resides with due consideration to the income and other resources of such aged person and in accordance with the rules

and regulations of the State Department. A voluntary statement by any child or other relative, except husband or wife, as to the amount and kind of aid or assistance he is contributing or expects to contribute to an applicant for old age assistance shall be accepted by the State Department as prima facie evidence of the availability and amount of such contribution; provided, however, that actual contributions to the applicant must be considered by the State Department. The amount of assistance given shall provide such aged person with a reasonable subsistence compatible with decency and health, within the limitations and provisions of the Constitution of Texas as are now provided, or may hereafter be provided."

The above quoted provisions clearly provide that old age assistance shall be given to those who do not have sufficient income to provide a reasonable subsistence compatible with health and decency. It is further provided that such assistance shall be given which will provide a qualified person with a reasonable subsistence compatible with health and decency. By authority of these provisions, the State Department of Public Welfare grants assistance to a qualified person by determining the amount of money such person needs to provide himself with the basic necessities less the amount of his income, subject however to the Constitutional limitation. That is to say, if a person has income it is applied on his needs and the grant of assistance represents need above income. It follows that when a person receives an amount of income in excess of his needs or equal to his needs, he is not entitled to old age assistance as is provided by House Bill No. 611, supra (Article 695c).

From what we have said, it follows that if the phrase "to take care of his additional needs above his grant" be literally construed, then Senate Bill No. 169 means little, if anything, not already provided for by existing law. Illustration No. 1: "x" was placed on the old age assistance rolls on January 1, 1943 with a grant of $20.00 per month. At that time, the Department of Public Welfare determined that he needed $35.00 per month to provide himself with the basic necessities and that he had an income earned from employment

in the amount of $15.00 per month. The grant of assistance ($20.00) represents his amount of needs ($35.00) less his amount of income ($15.00). As long as "x" needs no more than $35.00 per month to provide himself with the basic necessities, he would not be entitled to the benefits of Senate Bill No. 169 because he has no additional needs. Therefore, if the phrase "to take care of his additional needs above his grant" be given its literal meaning, Senate Bill No. 169 would have no application to that group of persons typified by the above illustration.

Illustration No. 2: Suppose that on July 1, 1943 the State Department of Public Welfare finds that, due to the rise in the cost of living and/or other factors, "x" needs $55.00 per month to provide himself with the basic necessities. Under the existing law and without the need of Senate Bill No. 169, "x" could increase his earnings by an additional $20.00 per month and this additional income would in no way jeopardize his grant of old age assistance in the amount of $20.00 per month. The amount of his grant ($20.00) would still represent his amount of needs ($55.00) less the amount of his income ($35.00).

A third illustration is where an individual needs $55.00 per month to provide himself with the basic necessities and has no income. Due to statutory and constitutional limitations, the State Department of Public Welfare can grant him no more than $30.00 per month. It is quite true that his needs are in excess of his grant but under the existing law and without the application of Senate Bill No. 169, this individual would be permitted to accept employment and earn therefrom the difference ($25.00) between the amount he needs ($55.00) and the $30.00 grant. He could earn this difference and his grant of $30.00 would not be affected in any way.

The above illustrations show that if the phrase involved in this question be given its literal or strict meaning, Senate Bill No. 169 is entirely meaningless because it would not provide anything not already provided for by existing law. Recognizing the fact that the Legislature did not intend to do a useless and vain thing, and since such construction is not favored in law, we shall

attempt to construe the phrase in question to conform with the apparent purpose of the Act as expressed in it title, whereas clauses and emergency clause. When we do this, we arrive at the conclusion that the Legislature believed that there exists at this time and during the present emergency an area of "need" in addition to and above that "need" which the State Department of Public Welfare determines that is necessary to provide an individual with the basic necessities. Therefore, to give some meaning to the phrase "to take care of his additional needs above his grant," we arrive at the conclusion that an individual may earn $250.00 per calendar year from seasonal or occasional employment which amount is in addition to the amount found by the State Department of Public Welfare to be necessary to provide the individual with the basic necessities. In illustration No. 1, "x" would be entitled to earn said $250.00 in addition to the $15.oo income he already had. In illustration No. 2, "x" would be entitled to earn said $250.00 in addition to the $35.00 ($15.00 plus $20.00). In illustration No. 3, the individual would be entitled to earn $25.00 per month to make up the deficit which the State Department of Public Welfare has determined that he needs plus the said $250.00. In all of these situations, the above income can be earned without reducing the recipient's pension in any way.

We believe that what we have said above answers your fifth and sixth questions. If we be mistaken, we will be glad to answer any further inquiries on this subject.

Your seventh question is:

"Does Senate Bill No. 169 apply to a recipient who failed to report 'his said employment, in writing, to the local office of Public Welfare, giving the name and address of his employer or employers at the end of each month, and giving the amount of his earnings during the month just passed'? If not, would it apply when such recipient properly reported his employment after failure to report a given month?"

Senate Bill No. 169 provides in effect that an old age recipient shall receive the benefits of said Act "provided said recipient of old age pension reports his said employment,

in writing, to the local office of Public Welfare, giving the name and address of his employer or employers at the end of each month, and giving the amount of his earnings during the month just passed."

The word "provided" as used in statutes usually, though not always, implies a limitation or restriction on what has preceded in the context. See Words and Phrases for citation of numerous authorities. It can also be used in the conjunctive sense as in the place of the word "and". As used in the phrase in question, it is obvious to us that it is not used in the conjunctive sense. The phrase in question has no meaning as used in this Act unless it serves as a restriction or limitation on what precedes it in the body of the Act. It follows that Senate Bill No. 169 would not be applicable to a recipient who failed to report his earnings as provided by the above mentioned phrase. By this is meant that said Act has no application to earnings of a given month which are not reported as provided by said Act. The Act would apply to such earnings of a recipient for any given month provided they are properly reported.

Your eighth question is:

"Do the phrases 'seasonal and occasional employment' and 'Dollars that is actually derived and received in payment for labor actually performed or services rendered' mean that Senate Bill No. 169 applies to a recipient working for himself? A tenant farmer working on shares? A farm owner harvesting seasonal crops and tending to other farm duties for other periods?"

In answer to your eighth question, it is our opinion that Senate Bill No. 169 applies to a recipient who is working for himself as well as one working as an employee of another. The phrases "seasonal and occasional employment" and "Dollars that is actually derived and received in payment for labor actually performed or services rendered" are sufficiently broad to support our conclusion. Keeping in mind the purpose of the Act in question, we find no reason for restricting its application when its very language permits a more liberal interpretation.

The word "employment" has many meanings. It has been defined as that which engages or occupies and as that which consumes time or attention. Webster's New International Dictionary, Second Edition. The above definitions clearly show that said word can refer to a person who is self-employed as well as to one who is employed by another.

We might point out that the word "employer" is used in another part of the Act, discussed in the preceding question, and, at first impression, it might be inferred from the use of this word that the Act in question only applied to a recipient who was an employee of another and not one who was self-employed. However, the only purpose of the phrase containing the word "employer" is to require the reporting of the earnings of the recipient. It clearly was not intended to describe that general class of persons to whom the Act could have application.

Your ninth question is:

"In order to avoid a conflict in the Federal and State laws, can the Department interpret Senate Bill No. 169 to apply only to recipients receiving income from agriculture as provided in Public Law 45?"

In answer to your ninth question, you are advised that there is nothing in the title or body of Senate Bill No. 169 which even remotely suggests that said Act is limited to earnings from agriculture labor. We know of no rule of construction which would have the effect of limiting the application of said Act to earnings from agriculture labor. Your ninth question is answered in the negative.

Your tenth question is:

"In order to avoid a conflict in the Federal and State law, can Senate Bill No. 169 be interpreted to mean actual payment when reference is made to 'grant'?"

The State Department of Public Welfare has always denoted "grant" as the amount of assistance a recipient should

receive, subject to statutory and constitutional limitations, to provide himself with the basic necessities. Where an individual needs $40.00 per month to provide himself with the basic necessities and has an income of $25.00 per month, his "grant" is $15.00. It is easily seen that the word "grant", as used here, has a direct relation to a recipient's needs.

It is a matter of common knowledge in Texas that the payments made to old age recipients are not equal to the "grant" because the Legislature has not appropriated sufficient funds to pay the grants in full. The amount actually received by a recipient is determined by the number of individuals on the rolls and the amount each should receive. To illustrate: "x" needs $40.00 per month to provide himself with basic necessities, and has an income of $15.00 per month. He is therefore eligible to receive $25.00 per month as old age assistance. This $25.00 has always been denoted as a "grant" by the State Department of Public Welfare. As a matter of fact, "x" actually receives less than $25.00 per month because sufficient funds have not been made available.

Neither the State Department of Public Welfare nor any recipient knows how much assistance he will receive for a given month until time arrives for each monthly payment to be made. Consequently, we think that when the Legislature used "grant" in Senate Bill No. 169, it had in mind what a recipient should receive to provide himself with the basic necessities and not what he actually does receive. Your tenth question is answered in the negative.

Your eleventh question is:

"In the event it is impossible to interpret Senate Bill No. 169 in such a manner which would be acceptable under the Federal Social Security Act, must Senate Bill No. 169 be put into actual operation in Texas even though its operation would cause the loss of Federal matching funds for old age assistance?"

The answer to your eleventh question must be in the affirmative. Under our system of government, the Legislature makes the laws and the executive and judicial branches of the

government must enforce them if they do not violate the Constitution of the State or of the United States. That the State may lose benefits by enforcing the law is a matter for the Legislature alone. "No power of suspending laws in this State shall be exercised except by the Legislature." Texas Constitution, Art. 1, Section 28.

Federal authorities do not exercise a right of superior control over the matter of old age assistance laws of this State. The program has its basis in mutual consent of the State and Federal governments. If, therefore, the State Legislature passes an Act to which the Federal government is not willing to give its consent, that Act is not invalid because obnoxious to the Federal authorities, in the absence of a declaration of legislative intent that such Act shall not be effective if the Federal authorities shall fail to assent to its provisions.

The Legislature, by the Act under consideration, has manifested an intent to liberalize the old age assistance laws of this State. It has the power to do so. It has not provided that such liberalization shall be effective only if the Federal Government shall give its consent. In such circumstances, neither you nor any other officer or agency of the executive or judicial branch of the State government has authority to suspend Senate Bill No. 169 or to decline to put it into operation.

We trust that we have satisfactorily answered all of your questions.

APPROVED JUL 24, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

This opinion considered and approved in limited conference

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

/s/ Lee Shoptaw
Assistant

LS:fo